# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn T. Chadwick, : 
                 Petitioner : 
                  : 
        v. : No. 290 C.D. 2018
                  : Argued: November 15, 2018
Unemployment Compensation : 
Board of Review, : 
               Respondent : 

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE ELLEN CEISLER, Judge

*OPINION NOT REPORTED*

**MEMORANDUM OPINION**
**BY JUDGE BROBSON**           **FILED: January 31, 2019**

Petitioner Lynn T. Chadwick (Claimant) petitions for review of an order of the Unemployment Compensation Board of Review (Board). The Board affirmed an Unemployment Compensation Referee's (Referee) decision, which determined Claimant ineligible for unemployment compensation benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law).[1] For the reasons set forth below, we affirm.

Claimant applied for unemployment compensation benefits after being discharged from her employment as an Accounts Receivable Clerk for FEA

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e).

Industries Incorporated (Employer).  On October 2, 2017, the Erie Unemployment Compensation Service Center (Service Center) issued a notice of determination, finding Claimant ineligible for benefits under the Law.  Claimant appealed the notice of determination, and the Referee conducted a hearing.

Chrystal Colflesh, General Manager for Employer, testified that around the second week of June 2017, she became aware, through Sherry Berry, Employer's Customer Service Manager, that Claimant had divulged other employees' pay rates. (Certified Record (C.R.), Item No. 11 at 6.)  Thereafter, Ms. Colflesh started an investigation. (*Id.* at 7.)  The investigation entailed speaking with several employees throughout the entire facility to find out how many times Claimant broke Employer's confidentiality rule by disclosing pay rates of employees to other employees. (*Id.*) Ms. Colflesh's investigation took six to eight weeks due to her other job duties. (*Id.*) Employer did not make Claimant aware of the investigation.  (*Id.*)  Claimant continued her employment during the investigation.  (*Id.*)  At the conclusion of the investigation, Ms. Colflesh determined that Claimant had disclosed confidential payroll information to several people.  (*Id.*)  Ms. Colflesh discussed the findings of her investigation with Claimant.  (*Id.* at 8.)  Ms. Colflesh testified that Claimant, at first, said nothing.  (*Id.*)  Later, Claimant said she thought she could disclose this information to Ms. Berry.  (*Id.*)  Claimant then stormed out when Ms. Colflesh explained that Claimant could not disclose the information to anyone but Employer's owner, William Heffner, and herself.  (*Id.*)  Ms. Colflesh next notified Mr. Heffner of her findings, after which Mr. Heffner terminated Claimant's employment.  (*Id.*)

Ms. Colflesh further testified that Employer has a progressive disciplinary policy, and discipline varies based on the offense.  (*Id.* at 11.)  Ms. Colflesh explained that Employer could ask employees to leave at any time for

serious infractions, and, while breach of confidentiality is not listed as a serious infraction, the list is not a limited list. (*Id.* at 11.)

Mr. Heffner testified that he fired Claimant for divulging employees' pay rates to other employees. (*Id.*) He became aware of Claimant's conduct when Ms. Colflesh brought it to his attention. (*Id.*) Mr. Heffner further testified that Employer has a policy in its handbook prohibiting employees from divulging payroll information to other employees. (*Id.*) Mr. Heffner further testified that he did talk to Claimant about the allegation, and she responded by asking if she still had a job. (*Id.*) He acknowledged that Claimant never expressly admitted to divulging payroll information, but he told her that she no longer had a job with Employer. (*Id.* at 5-6.) Mr. Heffner further testified that he learned of Claimant's conduct after Ms. Colflesh's investigation. Mr. Heffner further testified that he did not give Claimant a written notice of termination, only a verbal notice. (*Id.* at 9.)

Ms. Berry testified that Claimant approached her and started volunteering other employees' salaries. (*Id.* at 16.) More specifically, Ms. Berry testified that Claimant was doing payroll, became flustered, divulged a particular employee's wage, and stated that "[s]he should make more money than [the other employee] did." (*Id.* at 17.) Ms. Berry further testified that Claimant revealed similar information about two other employees. (*Id.*) Ms. Berry added that Claimant initiated this conversation and that this was the only conversation they had regarding salaries. (*Id.*) Ms. Berry testified that she immediately disclosed to Ms. Colflesh her conversation with Claimant. (*Id.* at 19.)

Catherine Smith, Employer's Customer Service Supervisor, testified that Claimant disclosed the payroll information of another employee to her. (*Id.* at 20.) Ms. Smith further testified that Claimant divulged to her the hourly wage of

3

one of the lab managers. (*Id.* at 21.) Ms. Smith did not remember the specifics of this encounter, but she did remember that she did not solicit the information. (*Id.*) Ms. Smith further testified that she did not disclose this interaction with Claimant to Employer until after Employer terminated Claimant's employment. (*Id.* at 21-22.)

Claimant testified that she does not recall the conversation with Ms. Smith, but she does recall the conversation with Ms. Berry. (*Id.* at 22.) Claimant testified that Ms. Berry came into her office asking about her female employees and whether they were being paid fairly. (*Id.* at 23.) Claimant denied disclosing employees' specific salaries. (*Id.*) She testified that she told Ms. Berry that Ms. Colflesh looked at the industry standard when setting salaries. (*Id.*) Claimant heard nothing about her conversation with Ms. Berry until after Ms. Colflesh's vacation in July, when Claimant asked Ms. Colflesh why she had been distant. (*Id.*) According to Claimant, Ms. Colflesh said that she was disappointed in Claimant because Claimant disclosed confidential information. (*Id.*) Claimant further testified that another employee approached her on August 28, 2017, regarding a conversation the other employee had with Ms. Colflesh about Claimant's possible termination. (*Id.* at 24.) Claimant went to Ms. Colflesh's office, which is when she realized that she was in trouble. (*Id.*) Claimant testified that her conversation with Ms. Berry did not disclose payroll information, and she believed it was appropriate to talk generally to Ms. Berry about how salaries were set, because Ms. Berry was Ms. Colflesh's "right-hand person in charge." (*Id.* at 25.) Furthermore, while she had access to employees' salaries, Claimant did not memorize them, as she was busy learning her new job tasks. (*Id.* at 27.) Finally, Claimant testified that Ms. Colflesh never expressed to her that she was dissatisfied with her job performance. (*Id.*)

4

Following the hearing, the Referee issued a decision, in which she affirmed the determination of the Service Center, concluding that Claimant was ineligible for unemployment compensation benefits. In doing so, the Referee made the following findings of fact:

> 1. The claimant was employed by FEA Industries Incorporated as an Accounts Receivable Clerk at a rate of $17.00 per hour that began October 22, 2013 and last worked on August 28, 2017.
>
> 2. The claimant was promoted to the position of Accounts Receivable Clerk in March 2017 at which time she was explained [sic] that this was a job in which she was required to maintain confidentiality and not discuss payroll or other personal [sic] related matters concerning company employees.
>
> 3. In or about mid[-]June 2017, the employer received information from a Manager that claimant disclosed confidential information about employees' payroll information with others following which an investigation ensued spanning over a 6[-] to 8[-]week period.
>
> 4. The employer's investigation entailed speaking with multiple employees and after doing so concluded the claimant violated the confidentiality of [sic] policy.
>
> 5. The claimant when confronted about the disclosure asked the employer if she still had a job and requested to move back to customer service which was denied.
>
> 6. On or about August 28, 2017, the claimant was discharged following the investigation of a breach in the confidentiality policy.

(Referee's Decision and Order at 1-2.) In concluding that Claimant engaged in disqualifying willful misconduct, the Referee reasoned:

> [T]he claimant breached the employer's confidentiality policy when she chose to discuss hourly rates with another employee who did not solicit the conversation. The record is clear that claimant initiated the conversation between herself and another employee and has failed to establish good cause for so doing.

5

(*Id.* at 2.)

Claimant appealed the Referee's decision to the Board, and the Board affirmed the Referee's decision. In so doing, the Board adopted and incorporated the Referee's findings of fact and conclusions of law, while adding two additional findings of its own. First, the Board added the following finding: "In April 2017, the claimant informed a customer service supervisor that one of the lab managers made [a specific amount per] hour." (Board's Decision and Order at 1.) Next, the Board found: "On the day of the incident, the claimant was doing payroll and was flustered and said to the customer service manager that she should make more money and then proceeded to disclose how much money certain employees made." (*Id.*)

Based on the above findings, the Board concluded that Claimant's conduct was not too remote in time from the date of her termination to form the basis for a denial of benefits and that Employer terminated her employment due to willful misconduct. The Board reasoned:

> The claimant was fired on August 28, 2017, when the employer had a full understanding of the situation. The situation happened the second week of June[,] and the investigation was complete on August 28, 2017. A delay between an incident of alleged misconduct and discharge that is not substantial, unexplained or unreasonable will not bar a holding of willful misconduct that would render a claimant ineligible for benefits where management was investigating and undertaking steps necessary to remove the claimant. The employer's witness explained he [2] had to talk to other employees and conduct an investigation while doing his own work at the same time. The Board finds this reasonable.

(*Id.*)

---

[2] The witness to whom the Board is referring is Ms. Colflesh. Although the Board refers to the witness here as a male, the record reflects that she is a female.

On appeal to this Court,[3] Claimant does not dispute any of the findings as to her conduct or any of the specific factual findings regarding the timing of the events–*i.e.*, finding of fact numbers 3, 4, or 6. Rather, Claimant appears to challenge the Board's finding that the length of Employer's delay between her conduct and the termination of her employment was not substantial, unexplained, or unreasonable.[4] (Petitioner's Br. at 11.) Claimant takes the position that, under the remoteness doctrine,[5] the amount of time between her conduct and the termination of her employment was too great for her conduct to constitute disqualifying willful misconduct.

First, we will address whether the Board's findings of fact are supported by substantial evidence. Claimant contends that substantial evidence does not exist to support the Board's finding that the delay between Claimant's conduct and her discharge was not substantial, unexplained, or unreasonable, as it took Employer approximately 10 weeks to fire Claimant and Employer did not provide an adequate reason for the length of time that passed between Claimant's conduct of divulging confidential payroll information and the termination of her employment. Claimant further contends that Employer's position that it was undertaking steps necessary to determine appropriate disciplinary action for Claimant is not supported by the evidence, because Employer did not need to conduct an investigation to fire

---

[3] This Court's standard of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

[4] We have paraphrased Claimant's issues on appeal based upon our review of Claimant's statement of questions involved and the arguments contained in her brief.

[5] Under the remoteness doctrine, "[a]n incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits." *Tundel v. Unemployment Comp. Bd. of Review*, 404 A.2d 434, 436 (Pa. Cmwlth. 1979).

Claimant given that her conduct was reported immediately and was severe enough to justify immediate termination.

Substantial evidence is defined as relevant evidence upon which a reasonable mind could base a conclusion. *Johnson v. Unemployment Comp. Bd. of Review*, 502 A.2d 738, 740 (Pa. Cmwlth. 1986). In determining whether there is substantial evidence to support the Board's findings, this Court must examine the testimony in the light most favorable to the prevailing party, giving that party the benefit of any inferences that can logically and reasonably be drawn from the evidence. (*Id.*) A determination as to whether substantial evidence exists to support a finding of fact can only be made upon examination of the record as a whole. *Taylor v. Unemployment Comp. Bd. of Review*, 378 A.2d 829, 831 (Pa. 1977). The Board's findings of fact are conclusive on appeal only so long as the record taken as a whole contains substantial evidence to support them. *Penflex, Inc. v. Bryson*, 485 A.2d 359, 365 (Pa. 1984).

In an unemployment compensation case, the Board is the ultimate fact finder and is, therefore, entitled to make its own determinations as to witness credibility and evidentiary weight. *Peak v. Unemployment Comp. Bd. of Review*, 501 A.2d 1383, 1386 (Pa. 1985). The Board is also empowered to resolve conflicts in the evidence. *DeRiggi v. Unemployment Comp. Bd. of Review*, 856 A.2d 253, 255 (Pa. Cmwlth. 2004). "The fact that [a party] may have produced witnesses who gave a different version of the events, or that [the party] might view the testimony differently than the Board is not grounds for reversal if substantial evidence supports the Board's findings." *Tapco, Inc. v. Unemployment Comp. Bd. of Review*, 650 A.2d 1106, 1108-09 (Pa. Cmwlth. 1994). Similarly, even if evidence exists in the record that could support a contrary conclusion, it does not follow that the

findings of fact are not supported by substantial evidence. *Johnson v. Unemployment Comp. Bd. of Review*, 504 A.2d 989, 990 (Pa. Cmwlth. 1986).

Here, the testimony of Employer's witness, Ms. Colflesh, that Employer had a progressive disciplinary policy, which set forth a nonexclusive list of infractions that justified immediate termination, supports the Board's finding that Claimant's conduct was not too remote from her termination, as Employer needed to investigate to discern the appropriate discipline for Claimant's conduct. (C.R., Item No. 11 at 11.) Furthermore, the testimony of Ms. Colflesh that the situation happened the second week of June and she completed the investigation on August 28, 2017, because she had to talk to other employees and conduct an investigation while attending to her other responsibilities, supports the Board's findings that the delay in termination was reasonable, explained, and not substantial. (*Id.* at 7.) When viewed in a light most favorable to Employer, the record in this case demonstrates that there is substantial evidence to support the Board's findings.[6]

---

[6] Claimant, in her brief, describes the time period between when Employer learned of her violation of the confidentiality policy in mid-June 2017 to the date of her firing (August 28, 2017) as a 10-week period. To the extent that Claimant's argument could be interpreted as challenging the portion of finding of fact number 3 that found "an investigation ensued spanning over a 6[-] to 8[-]week period," we would still conclude that substantial evidence exists to support that portion of finding of fact number 3. Ms. Colflesh testified that her investigation took six to eight weeks, and she did not specify the manner in which she calculated that time period. Moreover, Claimant testified that Ms. Colflesh was on vacation at some point in July 2017, suggesting that Ms. Colflesh was not investigating the matter during that time period. Thus, we conclude that substantial evidence exists to support that portion of finding of fact number 3. Furthermore, we note that even if that portion of finding of fact number 3 is based on Ms. Colflesh's underestimation of the time period of her investigation, it is apparent that the Board was clearly aware of the dates at issue, given that the Board found that Employer learned of the conduct in mid-June 2017 and fired Claimant on August 28, 2017. Thus, this potential discrepancy in the time period does not affect the Board's rationale.

We next address Claimant's contention that the Board erred in concluding that the remoteness doctrine barred Employer, as a matter of law, from relying on Claimant's violation of its confidentiality policy as a basis for disqualifying willful misconduct under Section 402(e) of the Law.[7] Section 402(e) of the Law provides, in part, that "[a]n employe shall be ineligible for compensation for any week . . . [i]n which his employment is due to his discharge or temporary suspension from work for willful misconduct connected with his work."  The employer bears the burden of proving that the claimant's unemployment is due to the claimant's willful misconduct.  *Walsh v. Unemployment Comp. Bd. of Review*, 943 A.2d 363, 369 (Pa. Cmwlth. 2008).  The term "willful misconduct" is not defined by statute.  The courts have defined "willful misconduct" as follows:

> (a)  wanton or willful disregard for an employer's interests;  (b)  deliberate violation of an employer's rules; (c) disregard for standards of behavior which an employer can rightfully expect of an employee; or (d) negligence indicating an intentional disregard of the employer's interest or an employee's duties or obligations.

*Grieb v. Unemployment Comp. Bd. of Review*, 827 A.2d 422, 425 (Pa. 2003).  An employer seeking to prove willful misconduct by showing that the claimant violated the employer's rules or policies must prove the existence of the rule or policy and that the claimant violated it.  *Walsh*, 943 A.2d at 369.  An employer must additionally prove that the act in question was the actual reason for the claimant's discharge.  *Tundel*, 404 A.2d at 436.  All pertinent circumstances are considered in determining whether an employee's actions constituted willful misconduct.  *Rebel v. Unemployment Comp. Bd. of Review*, 723 A.2d 156, 158 (Pa. 1998).  A single

---

[7] Whether or not an employee's actions amount to willful misconduct is a question of law subject to review by this Court.  *Nolan v. Unemployment Comp. Bd. of Review*, 425 A.2d 1203, 1205 (Pa. Cmwlth. 1981).

incident of misconduct may support the denial of benefits. *Jones v. Unemployment Comp. Bd. of Review*, 373 A.2d 791, 792 (Pa. Cmwlth. 1997). While the employer bears the burden of proving that a claimant's behavior constitutes willful misconduct, the claimant may be eligible for unemployment compensation benefits if he can prove good cause for his actions. *Walsh*, 943 A.2d at 369.

Here, it is clear that Claimant's actions of disclosing confidential payroll information constituted willful misconduct, as Employer had a policy in its handbook, admitted into the record as Exhibit 11, which prohibited the disclosure of confidential information. (C.R., Item No. 11 at 10.) Claimant violated this policy when she disclosed specific salaries of other employees to Ms. Berry and Ms. Smith. (C.R., Item No. 11 at 17, 20.) Claimant has provided no testimony or evidence that would support that she had "good cause"[8] for her actions. Thus, in the absence of the remoteness doctrine, Claimant's conduct of sharing confidential payroll information clearly would constitute willful misconduct that could support a denial of benefits. Claimant contends, however, that her infractions discovered by Employer in June 2017 were too remote in time from her August 28, 2017 discharge from Employer to constitute *disqualifying* willful misconduct.

When applying the remoteness doctrine to negate a conclusion of willful misconduct, this Court explained:

> Considering the time span, it is unlikely that [the] employer would consider the specific incident to be of such grave consequence as to constitute willful misconduct. An incident of willful misconduct cannot be so temporally remote from the ultimate dismissal and still be the basis for a denial of benefits.

---

[8] To prove good cause, Claimant must demonstrate that her actions were justifiable and reasonable under the circumstances. *Walsh*, 943 A.2d at 369.

11

*Tundel*, 404 A.2d at 436. Case law, however, suggests that there are exceptions to the remoteness doctrine. In *Raimondi v. Unemployment Compensation Board of Review*, 863 A.2d 1242 (Pa. Cmwlth. 2004), this Court held that although there was a 74-day delay between a claimant's alleged misconduct and his discharge, the remoteness doctrine was not applicable so as to preclude a denial of benefits where the record established an explanation for the delay and there was no action on the part of the employer indicating that it condoned the claimant's conduct. *Raimondi*, 863 A.2d at 1247. In *Wideman v. Unemployment Compensation Board of Review*, 505 A.2d 364 (Pa. Cmwlth. 1986), this Court held that an employer's administrative review is a valid reason for a delay in terminating a claimant. *Wideman*, 505 A.2d at 367.

Claimant contends that the exception to the remoteness doctrine should not apply, because there was no need to conduct an investigation in this case given that the person who heard Claimant reveal personal wage information immediately reported it to the individual who had the authority to terminate Claimant's employment. Claimant asserts that no further investigation was required. Here, Employer has a progressive discipline policy under which it can terminate an employee's employment immediately if the employee commits a serious infraction. (C.R., Item No. 11 at 11.) Because breach of confidentiality is not listed in the progressive disciplinary policy as an immediately terminable offense, it was reasonable for Employer to perform an investigation into the frequency and extent of Claimant's disclosures to determine the severity of the violation before it issued a disciplinary action. (*Id.*) Additionally, even though Ms. Berry reported the conduct to Ms. Colflesh immediately, Ms. Colflesh testified to the reason for the delay when she explained that her investigation took six to eight weeks because she

was conducting the investigation alongside of her other job duties. (*Id.* at 7.) Furthermore, there are no additional facts in the record to suggest that Employer condoned Claimant's conduct. Thus, Claimant's conduct of divulging confidential payroll information was not too remote in time to establish disqualifying willful misconduct, because Employer's investigation constituted a valid delay in terminating Claimant's employment. For these reasons, the Board did not err.

Accordingly, we affirm the decision of the Board.

P. KEVIN BROBSON, Judge

13

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lynn T. Chadwick,                                    :
                              Petitioner            :
                                                     :
          v.                                         :     No. 290 C.D. 2018
                                                     :
Unemployment Compensation                            :
Board of Review,                                     :
                              Respondent            :

# **O R D E R**

AND NOW, this 31st day of January, 2019, the order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
P. KEVIN BROBSON, Judge